UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

TANVI MISRA,

2810 46th St, Apt 2
Astoria, NY 11103

　　　　　　　Plaintiff,

　　v.

FEDERAL BUREAU OF PRISONS,

320 First Street, NW
Washington, D.C. 20534

U.S. DEPARTMENT OF JUSTICE,

950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

　　　　　　　Defendants.

Case No. 26-2510

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

**Introduction and Background**

1.　　　This is an action under the Freedom of Information Act (the "FOIA" or

the "Act"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and

2202, to obtain improperly withheld agency records concerning the preventable

death in civil immigration detention of 49-year-old Canadian national Johnny

Noviello at the Bureau of Prisons' (BOP) Federal Detention Center Miami while in

U.S. Immigration and Customs Enforcement (ICE) custody. Through multiple FOIA

requests described herein, Plaintiff sought agency records from Defendants, the

Department of Justice (DOJ) and the BOP.

1

2.     Defendant Department of Justice (DOJ) failed to make a determination on Plaintiff's FOIA request within the period required by law and failed to adequately search for and make promptly available all reasonably segregable non-exempt agency records responsive to Plaintiff's FOIA request, in violation of the Act.

3.     Defendant BOP also failed to make a determination on Plaintiff's FOIA request within the period required by law and failed to adequately search for and make promptly available all reasonably segregable non-exempt agency records responsive to Plaintiff's FOIA request, in violation of the Act.

4.     Plaintiff Tanvi Misra ("Misra") seeks injunctive and declaratory relief as set forth in further detail below requiring Defendants to immediately begin processing and promptly release all reasonably segregable non-exempt portions of the requested records.

## JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). Plaintiff's request for injunctive relief is properly subject to this Court's subject-matter jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(F) and 28 U.S.C. §§ 1331, 2201(a), and 2202.

6.     Venue is proper within this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(b)(1), (b)(2), and (e)(1).

7.     Plaintiff has actually or constructively exhausted all administrative remedies in connection with both FOIA requests, as detailed below.

2

8.    Because Plaintiff brings this action after constructively exhausting administrative remedies, this Court's jurisdiction is based on 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552(a)(6)(C)(i).

9.    Congress passed the Freedom of Information Act, 5 U.S.C. § 552, in 1966 "to establish a general philosophy of full agency disclosure," S. Rep. No. 89–813, at 3 (1965), and "to assure the availability of Government information necessary to an informed electorate." H.R. Rep. No. 89–1497, at 12 (1966), 1966 U.S.C.C.A.N. 2418, 2429.

10.    The statute provides that, subject to certain enumerated exemptions, *see* 5 U.S.C. §§ 552(b)(1)-(9), federal agencies generally must make their internal records promptly available to the public upon request. *Id.* § 552(a)(3)(A).

11.    As the Supreme Court has recognized, FOIA's disclosure regime shines a light on government operations "to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).

## PARTIES

12.    Plaintiff Tanvi Misra is an award-winning writer and investigative journalist whose work primarily concerns migration and justice issues.[1] Her work has appeared in *The New York Review*, New York Magazine, Mother Jones

---

[1] Tanvi Misra writer & investigative reporter, (last visited July 13, 2026), https://www.tanvimisra.com/.

Magazine, *The Guardian, The Nation, Jewish Currents, The Baffler, High Country News, Politico,* and other edited publications. [2]

13. Her work has been cited in multiple non-fiction books concerning U.S. immigration policies,[3] an array of news outlets reporting on U.S. immigration policies,[4] two Congressional Reports concerning unaccompanied minors and border

---

[2] *See, e.g.*, Tanvi Misra, *Sanctuary City*, N.Y. REVIEW (Jan. 2, 2026), https://www.nybooks.com/online/2026/01/02/sanctuary-city-zohran-mamdani/; Tanvi Misra, *What Happened to the Migrants the U.S. Dumped in Panama?*, N.Y. MAGAZINE (Oct. 14, 2025), https://nymag.com/intelligencer/article/what-happened-to-the-migrants-dumped-in-panama.html; Tanvi Misra, *They've Won in Court, But ICE Is Still Detaining and Trying to Deport Them*, MOTHER JONES (Sept. 22, 2025), https://www.motherjones.com/politics/2025/09/ice-detention-third-country-removal/; Tanvi Misra, *'He's just a kid': the Maryland teenager swept into Trump immigration dragnet*, THE GUARDIAN (Apr. 30, 2025), https://www.theguardian.com/us-news/2025/apr/30/trump-administration-dragnet-teenager; Tanvi Misra, *"Essentially Cages": ICE Is Using Courthouse Cells for Lengthy Detentions*, THE NATION (Mar. 17, 2025), https://www.thenation.com/article/society/ice-detention-courthouse-holding-room/; Tanvi Misra, *The Deportation Dragnet*, JEWISH CURRENTS (Apr. 2, 2025), https://jewishcurrents.org/deportation-dragnet-student-visa-columbia-trump-palestine; Tanvi Misra, *Force Multiplier, ICE local collaboration agreements ensnare immigrants and citizens alike,* THE BAFFLER (May 8, 2025), https://thebaffler.com/latest/force-multiplier-misra; Tanvi Misra, *The fatal flaw in the Border Patrol's rescue program*, HIGH COUNTRY NEWS (Sept. 1, 2024), https://www.hcn.org/issues/56-9/the-fatal-flaw-in-the-border-patrols-rescue-program/; Tanvi Misra, *They Thought Their Sick Little Girl Would be Safe in America. Then It Denied Her Family Entry.,* POLITICO (Sept. 17, 2023), https://www.politico.com/news/magazine/2023/09/17/afghanistan-visa-family-00113267; *see also* Tanvi Misra writer & investigative reporter, (last visited July 13, 2026), https://www.tanvimisra.com/.

[3] JUSTIN AKERS CHACÓN, THE BORDER CROSSED US: THE CASE FOR OPENING THE US-MEXICO BORDER, (2021); ELLIOT YOUNG, FOREVER PRISONERS: HOW THE UNITED STATES MADE THE WORLD'S LARGEST IMMIGRANT DETENTION SYSTEM, (2020); SHOBA SIVAPRASAD WADHIA, BANNED: IMMIGRATION ENFORCEMENT IN THE TIME OF TRUMP, (2019).

[4] *See, e.g.*, Filipe De La Hoz, *The Shadow Court Cementing Trump's Immigration Policy*, THE NATION (June 30, 2020), https://www.thenation.com/article/society/trump-immigration-bia/; Mark Jospeh

searches and seizures, respectively,[5] a report by the U.S. Commission on Civil Rights on the trauma of border policies under the first Trump presidency,[6] and by the City of New York and Senator Sheldon Whitehouse concerning issues in United States immigration courts.[7] Misra also teaches journalism courses at the City University of New York's Craig Newmark School of Journalism as an adjunct faculty member.[8]

14.    Plaintiff is a representative of the news media for the purposes of the FOIA statute and the DOJ's regulations implementing FOIA.

---

Stern, *CBP's Detention of Iranian Americans was Probably Illegal*, SLATE (Jan. 6, 2020), https://slate.com/news-and-politics/2020/01/cbp-illegal-detention-iran-canada-washington-border.html.

[5] WILLIAM A. KANDEL, CONG. RSCH. SERV., R43599, UNACCOMPANIED ALIEN CHILDREN: AN OVERVIEW (2024), https://www.congress.gov/crs-product/R43599; KELSEY Y. SANTAMARIA & HILLEL R. SMITH, CONG. RSCH. SERV., R46601, HOMELAND SECURITY & EMERGENCY MANAGEMENT; IMMIGRATION; JUSTICE & LAW ENFORCEMENT; LAW CONSTITUTION & CIVIL LIBERTIES (2021), https://www.congress.gov/crs-product/R46601.

[6] U.S. COMM'N ON CIVIL R., TRAUMA AT THE BORDER: THE HUMAN COST OF INHUMANE IMMIGRATION POLICIES (2019), https://www.usccr.gov/files/pubs/2019/10-24-Trauma-at-the-Border.pdf.

[7] The City of N.Y, Comment Letter in Opposition of Proposed Rule "Appellate Procedures and Decisional Finality In Immigration Proceedings; Administrative Closure" (Sept. 25, 2020), https://www.nyc.gov/assets/immigrants/downloads/pdf/comments/NYC-Comment-DOJ-EOIR-Dkt-No-19-0022.pdf; Letter from Sen. Sheldon Whitehouse to Attorney General William P. Barr, (Feb. 13, 2020), https://www.whitehouse.senate.gov/wp-content/uploads/imo/media/doc/2020-02-13%20Ltr%20to%20AJ%20Barr%20re%20independence%20of%20immigration%20courts%20(004).pdf.

[8] Tanvi Misra, adjunct faculty, CRAIG NEWMARK GRADUATE SCHOOL OF JOURNALISM (last visited July 13, 2026), https://www.journalism.cuny.edu/faculty/tanvi-misra/.

15. Defendant DOJ is an agency within the meaning of 5 U.S.C. § 551(1). The Office of the Inspector General is a component of the DOJ. The DOJ has possession, custody, and control of records responsive to Plaintiff's FOIA requests.

16. Defendant BOP is an agency component of the U.S. Department of Justice. The BOP is a law enforcement agency responsible for the care and custody of federal prisoners and allows ICE to transfer non-citizens under ICE custody to federal prisons.[9]

17. Defendant BOP is an agency within the meaning of 5 U.S.C. § 551(1). The BOP has possession, custody, and control of records responsive to Plaintiff's FOIA requests.

## FACTS

**Mr. Noviello's preventable death at FDC Miami**

18. Mr. Noviello was found unresponsive by BOP FDC Miami personnel on June 23, 2025, according to ICE's public Detainee Death Report.[10]

---

[9] *See, e.g.*, Michael R. Sisak, *Federal prisons being used to detain people arrested in Trump's immigration crackdown*, A.P. (Feb. 7, 2025), https://apnews.com/article/immigration-federal-prisons-trump-25d676a6ebbff139ae04a75cd91be7e8.

[10] The Canadian newspaper outlet Globe and Mail reported that a Miami-Dade Fire Rescue incident report noted "reddish discoloration around [Mr. Noviello's] ankles, hips, and wrists," which suggested to two forensic pathologists that "Mr. Noviello had been dead for a period of time before being found." *See* Kathryn Blaze Baum et al., *Autopsy of Canadian in ICE custody indicates his death was preventable, experts say*, THE GLOBE & MAIL (Feb. 10, 2026), https://www.theglobeandmail.com/canada/article-johnny-noviello-ice-custody-death-preventable-autopsy-experts/.

19.    Facility medical staff arrived on the scene approximately seven minutes later and began administering CPR, applied an Automated External Defibrillator (AED), and called 911.

20.    The City of Miami Fire Rescue Department responded to the 911 call and took over life-saving measures, ultimately declaring Mr. Noviello deceased at 1:36 p.m.[11]

21.    According to an autopsy report obtained by another member of the news media, Mr. Noviello died of renal failure and idiopathic calcium oxidate nephropathy, a kidney disorder. It may be diagnosed by the presence of extremely painful kidney stones or "elevated levels of serum creatinine (Cr) in a routine blood panel."[12]

22.    ICE's public death report for Mr. Noviello did not indicate a cause or manner of death or mention any kidney issues.[13]

23.    ICE's death report does, however, note that on Mr. Noviello's second day at FDC Miami, he presented with "normal vitals except for elevated heart rate and abnormal blood pressure."

---

[11] *See* ICE DETAINEE DEATH REPORT: NOVIELLO, JOHNNY, https://www.ice.gov/doclib/foia/reports/ddr_NOVIELLOJohnny.pdf.

[12] *See* Andrew Free, *Cause and Manner*, DETENTION KILLS SUBSTACK (Jan. 30, 2026), https://detentionkills.substack.com/p/cause-and-manner.

[13] *See id.*; ICE DETAINEE DEATH REPORT: NOVIELLO, JOHNNY, https://www.ice.gov/doclib/foia/reports/ddr_NOVIELLOJohnny.pdf.

24.    The death report also revealed two instances in which labs were ordered for Mr. Noviello, first on May 20th, 2025, and then again on June 9th, 2025, after a behavioral health staffer intervened, noting Mr. Noviello's "poor personal hygiene" and that he had not been eating regularly.

25.    The report does not specify the results of Mr. Noviello's labs and whether his blood tested positive for elevated levels of serum creatinine.[14]

26.    On February 10, 2026, the Canadian newspaper *Globe and Mail* reported that expert reviews by six kidney specialists of Mr. Noviello's autopsy indicated that his death due to kidney failure was preventable.[15]

27.    The experts noted that regardless of what triggered Mr. Noviello's kidney failure, the failure "would have prompted symptoms of illness in the hours or

---

[14] ICE DETAINEE DEATH REPORT: NOVIELLO, JOHNNY, https://www.ice.gov/doclib/foia/reports/ddr_NOVIELLOJohnny.pdf.

[15] Four of the six specialists opined that "extensive deposit of calcium oxalate crystals" in Mr. Noviello's kidney was likely due to ingesting ethylene glycol, "a key ingredient in chemical solutions such as antifreeze," while two other specialists suggested that Mr. Noviello could have had "an undiagnosed condition in his liver or digestive system that caused excess oxalate to accumulate, which could have been exacerbated by severe dehydration in detention." *See* Kathryn Blaze Baum et al., *Autopsy of Canadian in ICE custody indicates his death was preventable, experts say*, THE GLOBE & MAIL (Feb. 10, 2026), https://www.theglobeandmail.com/canada/article-johnny-noviello-ice-custody-death-preventable-autopsy-experts/.

Free also obtained Mr. Noviello's Autopsy Report and related documents created by the Miami-Dade County Medical Examiner Department, available here: https://www.documentcloud.org/documents/28179909-2025-01808-histo/ *and* here: https://www.documentcloud.org/documents/28179908-autopsy/.

days prior to his death," which "rais[es] questions about how closely Mr. Noviello was monitored at the Federal Detention Center Miami."[16]

28.    The article further noted that while the lab work Mr. Noviello received twice in detention "could provide important information about whether Mr. Noviello did, in fact, have an underlying condition . . . the results of those analyses are not included in the autopsy report."[17]

29.    Additionally, Mr. Noviello's family received a record originating from the Department of Justice's Office of Inspector General of a complaint form filed by a medic against the Bureau of Prisons concerning Mr. Noviello's death.

30.    The complaint form states:

> In a referral of Incident received by the MIA on August 22, 2025, the Complainant alleges that a Local Multi-Level Mortality Review for the death of inmate Johnny Noviello was conducted after [(b)(6), (b)(7) redaction] was contacted to evaluate inmate Noviello due to his appearance of dizziness and instability. **The complainant states that [(b)(6) redaction] did not document the interaction she had with inmate Noviello and had no clear assessment or treatment plan for the inmate before his cardiac arrest.**

(emphasis added).[18]

---

[16] *See* Kathryn Blaze Baum et al., *Autopsy of Canadian in ICE custody indicates his death was preventable, experts say*, THE GLOBE & MAIL (Feb. 10, 2026), https://www.theglobeandmail.com/canada/article-johnny-noviello-ice-custody-death-preventable-autopsy-experts/.

[17] *Id.*

[18] *See* Department of Justice, Office of the Inspector General, *Freedom of Information/Privacy Act Request [25-OIG-796]* at 3 (May 28, 2026), https://www.documentcloud.org/documents/28180231-doj-oig-complaint-form-foia-25-oig-796-response-package/

9

**Plaintiff Misra's FOIA request to DOJ OIG**

31.    On June 2, 2026, Plaintiff Misra submitted a FOIA request to DOJ OIG seeking records concerning Johnny Noviello's death while in ICE custody, specifically "[a]ny additional records created or received by DOJ-OIG in its investigation and disposition of the case #MI-412-2025-015639"--the complaint number DOJ-OIG assigned to the case.

32.    Plaintiff's request and correspondence with the DOJ OIG is attached as Exhibit A, DOJ OIG FOIA request.

33.    Because "stale information is of little value," *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988), Plaintiff Misra sought expedited processing of her request, noting her work as a member of the media primarily engaged in disseminating information and the public's interest surrounding detained people's deaths in ICE custody. *See* Exhibit A, at 4.

34.    DOJ OIG responded to Plaintiff Misra's request on June 8, 2026. DOJ OIG acknowledged the request and assigned it a case number of 26-OIG-301 and informed Plaintiff Misra that the request was referred to the Department of Justice Office of Public Affairs to determine whether to grant expedited processing for the request. DOJ OIG also informed Plaintiff Misra that it may charge fees to search for the requested records. *Id.* at 6.

35.    On June 10, 2026, the DOJ OIG sent Plaintiff Misra a letter informing her that the Department of Justice Office of Public Affairs denied her request for

10

expedited processing. DOJ OIG additionally stated that it would answer Plaintiff

Misra's request "as quickly as possible." *Id.* at 7.

36.    On the same day, June 10, 2026, Plaintiff Misra appealed the denial of

expedited processing for her request, noting that the original request cited multiple

justifications[19] for why the request pertained to "an urgency to inform the public

about an actual or alleged federal government activity[.]" *Id.* at 9-10 (citing 28

C.F.R. § 16.5(e)(1)(ii) (internal quotations marks omitted).

37.    To date, Plaintiff Misra has received no further responses from the

agency.

38.    As of the date of this filing, DOJ OIG has not completed its search and

review of records responsive to Plaintiff's request.

39.    As of the date of this filing, DOJ OIG has not taken action on

Plaintiff's request that she can appeal.

---

[19] Plaintiff Misra noted that "[a]s a journalist, it is my duty to inform the public about any failures that resulted in this death so 1) if preventable, future deaths can be avoided and (2) the public is better informed around the policies and practices around immigrant detention" and that the request was also a "matter of widespread and exceptional media interest" under 28 C.F.R. § 16.5(e)(1)(iv) as "1) The federal government is set to have the highest death toll in immigration detention this year since deaths started being counted . . . 19 to date. 2) in protest of alleged neglectful medical treatment and substandard food, and various violations of rights and due process, detainees have launched hunger strikes at federal facilities around the country . . . 3) The deaths of detainees in federal custody and the policies/failures behind it is of immense interest to the public – and to members of congress . . . 4) News organizations around the country are covering government decision making that may have resulted in this higher death toll. 5) Senior ICE officials have indicated no wrongdoing by the government and so greater clarity is required around the circumstances behind these deaths."  Exhibit A at 9-10.

40.    As of the date of this filing, DOJ OIG has not indicated to Plaintiff which records it will produce and which records it seeks to withhold.

41.    As of the date of this filing, DOJ OIG has failed to make a determination on Plaintiff's request for records.

**Plaintiff Misra's FOIA request to BOP**

42.    On June 2, 2026, Plaintiff Misra submitted a FOIA request to BOP seeking records concerning Johnny Noviello's death while in ICE custody, specifically "[a]ll pages of the Department of Justice Office of Inspector General investigation" that were referred to the Federal Bureau of Prisons.

43.    Plaintiff's request and correspondence with the BOP are attached as Exhibit B, BOP FOIA Request.

44.    Plaintiff Misra sought expedited processing of her request, noting her work as a member of the media primarily engaged in disseminating information and the public's interest surrounding detained people's deaths in ICE custody. *See* Exhibit B, at 4.

45.    The BOP responded to Plaintiff Misra's request on June 16, 2026. The BOP acknowledged the request and assigned it a case number 2026-05551. The BOP denied Plaintiff's request for expedited processing under the justification that Plaintiff Misra "provided insufficient information . . . to support a claim regarding an urgency to inform the public." *Id.* at 6. The BOP additionally invoked a 10-day extension to determine whether to comply with the request. *Id.* at 6-7.

12

46.     On June 18, 2026, Plaintiff Misra appealed the BOP's denial of expedited processing for her request, noting that the original request cited multiple justifications[20] for why the request pertained to "an urgency to inform the public about an actual or alleged federal government activity[.]" *Id.* at 9-10 (citing 28 C.F.R. § 16.5(e)(1)(ii) (internal quotations marks omitted).

47.     On July 10, 2026, the DOJ sent Plaintiff Misra a letter informing her that the agency affirmed the BOP's denial of expedited processing for the request. *Id.* at 13-14.

48.     To date, Plaintiff Misra has received no further responses from the agency.

49.     As of the date of this filing, BOP has not completed its search and review of records responsive to Plaintiff's request.

50.     As of the date of this filing, BOP has not taken action on Plaintiff's request that she can appeal.

---

[20] Plaintiff Misra noted that "[a]s a journalist, it is my duty to inform the public about any failures that resulted in this death so 1) if preventable, future deaths can be avoided and (2) the public is better informed around the policies and practices around immigrant detention" and that the request was also a "matter of widespread and exceptional media interest" under 28 C.F.R. § 16.5(e)(1)(iv) as "1) The federal government is set to have the highest death toll in immigration detention this year since deaths started being counted: 19 to date. 2) in protest of alleged neglectful medical treatment and substandard food, and various violations of rights and due process, detainees have launched hunger strikes at federal facilities around the country . . . 3) The deaths of detainees in federal custody and the policies/failures behind it is of immense interest to the public – and to members of congress . . . 4) News organizations around the country are covering government decision making that may have resulted in this higher death toll. 5) Senior ICE officials have indicated no wrongdoing by the government and so greater clarity is required around the circumstances behind these deaths."  Exhibit B at 9-10.

51.    As of the date of this filing, BOP has not indicated to Plaintiff which records it will produce and which records it seeks to withhold.

52.    As of the date of this filing, BOP has failed to make a determination on Plaintiff's request for records.

**Urgent Public Interest in Timely Disclosure of ICE Death Records**

53.    The rate of deaths in ICE detention has reached an all-time high.

54.    Thirty-three people have passed away so far in ICE custody during Fiscal Year 2026, surpassing the previous record high of 29 acknowledged in-custody deaths during Fiscal Year 2004. More than ten percent of all people to die in the agency's custody died in 2025—the highest total ever.

55.    As a result, the public's interest in the circumstances of people's deaths and the government's response to them has also reached a tipping point.

56.    Because ICE's detention death toll continues increasing, the volume of in-depth coverage of deaths in ICE detention has been obligated to keep pace.[21]

---

[21] *See, e.g.*, Douglas MacMillan & Aaron Schaffer, *An ICE detainee sought treatment for mental illness. He died in a struggle with guards.*, WASH. POST (July 2, 2026), https://www.washingtonpost.com/immigration/2026/07/02/ice-detainee-sought-mental-help-before-fatal-struggle-with-guards-records-show/; José Olivares, *UN calls for 'prompt investigations' of deaths in US immigration custody*, THE GUARDIAN (June 26, 2026), https://www.theguardian.com/us-news/2026/jun/26/un-deaths-immigration-custody-human-rights-law; Michael Biesecker & Ryan J. Foley, *Largest ICE detention facility wasted millions and put detainees at risk, report finds*, THE A.P. (June 9, 2026), https://apnews.com/article/ice-immigration-crackdown-texas-camp-montana-report-04bc547c02e7241fc73541a4d0ba26ad; Isabela Dias, *Immigrants Are Dying in ICE Detention. A Key Watchdog Office Is Now Gone.*, MOTHER JONES (May 15, 2026), https://www.motherjones.com/politics/2026/05/how-the-trump-administration-gutted-immigration-detention-oversight/; Douglas MacMillian, *Internal ICE records reveal widespread use of force in detention centers*, WASH. POST (May 4, 2026),

57.     This coverage demands timely access to primary source agency records revealing to the public "what their government is up to," *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994).

58.     Due to the public interest in these in-custody deaths, senior administration officials have faced repeated questions from lawmakers and the news media about their numbers, causes, and efforts to mitigate conditions that allow people to die inside.

---

https://www.washingtonpost.com/business/2026/05/04/ice-detention-centers-force/; Camilo Montoya-Galvez, *ICE reports 18th detainee death in 4 months, putting agency on track for new record*, CBS NEWS (May 1, 2026), https://www.cbsnews.com/news/ice-detainee-deaths-2026/; Sergio Martínez-Beltrán et al., *Deaths of migrants in ICE custody hit record high under Trump*, NPR (Apr. 17, 2026), https://www.npr.org/2026/04/17/nx-s1-5789092/deaths-of-migrants-in-ice-custody-hit-record-high-under-trump; Armando Garcia & Laura Romero, *Death rates at ICE detention facilities raise concerns about health standards: Study*, ABC NEWS (Apr. 16, 2026), https://abcnews.com/US/death-rates-ice-detention-facilities-raise-concerns-health/story?id=132121020; St. John Barned-Smith & Ko Lyn Cheang, *Inside ICE detention centers, medical misdiagnoses and delays prove deadly*, SF CHRONICLE (Apr. 9, 2026), https://www.sfchronicle.com/projects/2026/ice-detention-deaths/; Jazmine Ulloa et al., *Deaths in ICE Custody Are Growing. 'They Let Him Rot in There.'*, N.Y TIMES (Mar. 29, 2026), https://www.nytimes.com/2026/03/29/us/ice-detention-deaths-immigrants.html; Syra Ortiz Blanes & Claire Healy, *Teenaged Mexican immigrant dies in ICE detention in Florida in 'presumed suicide,'* MIAMI HERALD (Mar. 23, 2026), https://www.miamiherald.com/news/local/immigration/article315116424.html; Justin Glawe, *Record deaths in US immigration custody expose systemic failures*, THE GUARDIAN (Mar. 21, 2026), https://www.theguardian.com/us-news/2026/mar/21/ice-deaths-trump-administration; Douglas MacMillan, *ICE detention staff reported death of restrained man as a suicide*, WASH. POST (Jan. 23, 2026), https://www.washingtonpost.com/business/2026/01/23/ice-detainee-death-911-calls/.

59.     For example, Secretary of Homeland Security Markwayne Mullin recently had a "heated exchange"[22] with the ranking member during a House appropriations committee in which the Secretary admonished the Member, "You need to be informed about what you're talking about," and told her, "those are dangerous accusations you're making," in response to a question about the record numbers of deaths in ICE custody. [23]

60.     Tom Homan, who is reportedly functionally in charge of ICE's detention system, responded at length to a question from CBS News about the number of people dying inside and what efforts the administration is taking to reverse this trend. When the CBS interviewer asked Homan about the upward trend in immigration detention deaths, Homan replied that "[a] better question would be, 'Why is [*sic*] ICE deaths in custody far below any state prison, any federal prison? Why do we have the lowest death in custody of any state prison system or any federal incarceration system? Our deaths in custody are lower than everybody's. That's the first question you should be asking."[24]

---

[22] *See* C-SPAN, *Sec. Markwayne Mullin and Rep. Lauren Underwood Have a Heated Exchange During a House Appropriations Hearing*, (June 25, 2026), https://www.c-span.org/clip/house-committee/sec-markwayne-mullin-and-rep-lauren-underwood-have-a-heated-exchange-during-a-house-appropriations-hearing/5201904.

[23] THE HILL, *Markwayne Mullin refutes ICE detention death statistics in heated clash with Lauren Underwood*, (YouTube, June 25, 2026), https://www.youtube.com/watch?v=IE7hpjKFNLY.

[24] *See* CBS NEWS, *Extended Interview: Tom Homan Says ICE Embraced "Smarter" Deportation Tactics After Minneapolis*, (May 5, 2026) (question and answer at 25:25), https://www.cbsnews.com/video/extended-interview-tom-homan-says-ice-embraced-smarter-deportation-tactics-after-minneapolis/.

61.    In December, then-DHS Spokesperson Tricia McLaughlin, responding on X to an X post by Senate Judiciary Ranking Member Richard Durbin, stated that ICE's death rate is the lowest it's been in years.[25]

62.    These claims are provably false. According to a study in the Journal of the American Medical Association, a person's chances of dying in ICE detention, *i.e.*, the system's mortality rate, are the highest they've been in two decades—and exponentially higher than in the immediate past.[26]

63.    Compounding the problem created by defending its record with statistically false claims masked as "Fact Checks" is the administration's drastic scaling back of the information it publicly provides about each death, electing instead to characterize the departed as "criminal aliens" wherever possible, thus inviting the public to devalue their lives and memories, even where ICE itself possesses no record that the decedent was convicted of a crime.[27]

---

[25] *See* Tricia McLaughlin (@TriciaOhio), X (Dec. 20, 2025), https://x.com/TriciaOhio/status/2002467615294300639?ref_src=twsrc%5Etfw%7Ctw camp%5Etweetembed%7Ctwterm%5E2002467615294300639%7Ctwgr%5E70729c7 a7147155a5b87d5e53e21bab94c49fd21%7Ctwcon%5Es1_&ref_url=https%3A%2F%2 Fwww.foxnews.com%2Fpolitics%2Fdhs-fires-back-senate-dems-ice-detainee-death-claims-trying-twist-data.

[26] *See* Sanjay Basu et al., *Mortality in US Immigration and Customs Enforcement Detention*, JAMA 335(18):1632–1635 (2026), https://jamanetwork.com/journals/jama/article-abstract/2847650; Michele Heisler et al., *More US Immigration Detention, Less Oversight, and More Deaths*, JAMA 335;(18):1578-1580 (2026), https://jamanetwork.com/journals/jama/article-abstract/2847652.

[27] *See, e.g.*, *ICE criminal illegal alien detainee from Cuba passes away in Miami*, IMMIGR.& CUSTOMS ENF'T (Apr. 16, 2026), https://www.ice.gov/news/releases/ice-criminal-illegal-alien-detainee-cuba-passes-away-miami; *Criminal illegal alien from Mexico passes away at Glades County Detention Facility*, IMMIGR.& CUSTOMS ENF'T

64.    Given Mr. Homan's claims and the favorable comparison by Secretary Mullin of ICE's detention system to federal and state prisons, subjecting immigrants like Mr. Noviello to the higher mortality rates endemic to the federal prison system represents a conscious choice by federal officials to afford some immigrants in nominally civil detention a better chance at survival than others.

65.    As reported in NBC News reporter Julia Ainsley's book, *Undue Process*, this conscious choice by federal officials is explicitly aimed at striking enough fear in immigrant communities through rising spectacles of in-custody deaths and other harms to provoke people to simply self-deport.[28]

66.    That objective, like the facility where Mr. Noviello died, is punitive in nature and not a legally recognized purpose or power of ICE detention. *See R.I.L.-R. v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) (recognizing the limited justifications for civil detention articulated in *Demore v. Kim*, 538 U.S. 510, 529-31 (2003)) and *Zadvydas v. Davis*, 533 U.S. 678, 690-92 (2001).

67.    Timely access to primary source documents shedding light on the government's own findings about whether deaths were preventable and its

---

(Mar. 18, 2026), https://www.ice.gov/news/releases/criminal-illegal-alien-mexico-passes-away-glades-county-detention-facility; *Criminal illegal alien from Afghanistan with previous arrests for fraud and theft passes away at Texas hospital*, IMMIGR. & CUSTOMS ENF'T (Mar. 18, 2026), https://www.ice.gov/news/releases/criminal-illegal-alien-afghanistan-previous-arrests-fraud-and-theft-passes-away-texas.

[28] JULIA AINSLEY, UNDUE PROCESS: THE INSIDE STORY OF TRUMP'S MASS DEPORTATION PROGRAM (2026).

subsequent response or inaction is vital to arming the governed with the information necessary to hold the government accountable.

## CLAIMS FOR RELIEF

### COUNT I
### FAILURE TO MAKE A DETERMINATION
### VIOLATION OF 5 U.S.C. § 552 BY DOJ

68.    Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

69.    FOIA requires an agency to make a determination within a maximum of 30 working days under *Citizens for Responsibility and Ethics in Washington v. Federal Election Commission.* 711 F.3rd 180 (D.C. Cir. 2013) (Kavanaugh, J.).

70.    "[I]n order to make a 'determination' and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Id.* at 188.

71.    The DOJ has failed to make a determination as to the Plaintiff's FOIA request.

### COUNT II
### FAILURE TO ESTIMATE A DATE OF PRODUCTION
### VIOLATION OF 5 U.S.C. § 552(a)(7)(B)(ii) BY DOJ

72.    Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

73.     Defendant must establish a telephone line or internet service to provide an estimated date on which the agencies will complete action on the request.

74.     In violation of this statute, Defendant failed to provide an estimated date on which the requests would be completed.

## COUNT III
## FAILURE TO MAKE REASONABLY SEGREGABLE, NON-EXEMPT RECORDS PROMPTLY AVAILABLE
## VIOLATION OF 5 U.S.C. § 552(a)(3) BY DOJ

75.     Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

76.     Upon request, an "agency . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

77.     Defendant has violated this provision by failing to make records responsive to Plaintiff's requests "promptly available."

## COUNT IV
## VIOLATION OF 5 U.S.C. § 552(a)(4)(B)
## UNLAWFUL WITHHOLDING OF AGENCY RECORDS BY DOJ

78.     Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

79.     The DOJ is a government agency subject to the FOIA and must therefore make reasonable efforts to search for and release requested records and otherwise lawfully support and provide the basis for any withholdings made pursuant to the exemptions provided by the FOIA.

80. Plaintiff has a legal right under the FOIA to the timely search and release of responsive, non-exempt agency records responsive to the Plaintiff's FOIA requests.

81. The DOJ failed to conduct a timely search and release responsive, non-exempt agency records in response to the Plaintiff's FOIA requests.

## COUNT V
## VIOLATION OF 5 U.S.C. § 552(a)(6)(E)
## FAILURE TO CONDUCT EXPEDITIOUS APPEAL CONSIDERATION BY DOJ

82. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

83. 5 U.S.C. § 552(a)(6)(E)(i)(I)-(II) requires agencies to "promulgate regulations . . . providing for expedited processing of requests for records . . .[including] expeditious consideration of administrative appeals of such determinations of whether to provide expedited processing."

84. Under 28 C.F.R. § 16.5(e)(4), if the DOJ denies an expedited FOIA request and the requester appeals the expedited processing denial, "any appeal of that decision shall be acted on expeditiously."

85. The DOJ failed to provide any determination for Plaintiff Misra's appeal of the DOJ OIG's denial of expedited processing for her request.

## COUNT VI
## VIOLATION OF 5 U.S.C. § 552(a)(4)(B)
## UNLAWFUL WITHHOLDING OF AGENCY RECORDS BY BOP

86. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

21

87.    FOIA requires an agency to make a determination within a maximum of 30 working days under *Citizens for Responsibility and Ethics in Washington v. Federal Election Commission.* 711 F.3rd 180 (D.C. Cir. 2013) (Kavanaugh, J.).

88.    "[I]n order to make a 'determination' and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Id.* at 188.

89.    The BOP has failed to make a determination as to the Plaintiff's FOIA request.

## COUNT VII
## FAILURE TO ESTIMATE A DATE OF PRODUCTION
## VIOLATION OF 5 U.S.C. § 552(a)(7)(B)(ii) BY BOP

90.    Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

91.    Defendant must establish a telephone line or internet service to provide an estimated date on which the agencies will complete action on the request.

92.    In violation of this statute, Defendant failed to provide an estimated date on which the requests would be completed.

## COUNT VIII
## FAILURE TO MAKE REASONABLY SEGREGABLE, NON-EXEMPT RECORDS PROMPTLY AVAILABLE
## VIOLATION OF 5 U.S.C. § 552(a)(3) BY BOP

93.     Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

94.     Upon request, an "agency . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

95.     Defendant has violated this provision by failing to make records responsive to Plaintiff's requests "promptly available."

## COUNT IX
## VIOLATION OF 5 U.S.C. § 552(a)(4)(B)
## UNLAWFUL WITHHOLDING OF AGENCY RECORDS BY BOP

96.     Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

97.     The BOP is a government agency subject to the FOIA and must therefore make reasonable efforts to search for and release requested records and otherwise lawfully support and provide the basis for any withholdings made pursuant to the exemptions provided by the FOIA.

98.     Plaintiff has a legal right under the FOIA to the timely search and release of responsive, non-exempt agency records responsive to the Plaintiff's FOIA requests.

99.     DOJ failed to conduct a timely search and release responsive, non-exempt agency records in response to the Plaintiff's FOIA requests.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.  enter judgment on all counts in favor of Plaintiff and against Defendants;

2.  declare Defendants' withholdings under the FOIA unlawful and enjoin Defendants from continuing to withhold all non-exempt records responsive to the FOIA Requests;

3.  enjoin the agencies from further unlawful withholdings by entering an order requiring Defendants to produce, within 20 working days of the Court's order, or by such other date as the Court deems appropriate, all non-exempt records responsive to the FOIA Requests, all segregable portions of records responsive to the FOIA Requests, and *Vaughn* indices justifying the withholding of any responsive records withheld under any claim of exemption;

4.  award Plaintiff reasonable costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412(d)(1)(A); and

5.  award Plaintiff such further relief as the Court deems just, equitable, and appropriate.

Dated: July, 17, 2026                    Respectfully submitted,

24

By: /s/ *Daniel Melo*
     Daniel Melo

The Melo Law Firm
2920 Forestville Road
Ste 100, PMB 1192
Raleigh, NC 27616
(919) 348-9213
dan@themelolawfirm.com


By: /s/ *Emily Burns*
     Emily Burns *

The Melo Law Firm
2920 Forestville Road
Ste 100, PMB 1192
Raleigh, NC 27616
(919) 348-9213
emily@themelolawfirm.com
*Pro Hac Vice Forthcoming*

*Counsel for Plaintiff*